# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5251 | **DATE** | April 17, 2003 |
| **CASE TITLE** | American Nat Bank & Trust v. Allamerica Fin Life Ins Co | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion to dismiss [7-1] is granted in part and denied in part. The motion is denied as to Count I of the complaint. The motion is granted as to Counts II and III of the complaint. Plaintiffs are given until April 30, 2003, to replead Count II (the promissory estoppel claim) if they can allege specific promises and reliance. ENTER MEMORANDUM OPINION.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | number of notices | | |
| X | Notices MAILED by judge's staff. | | APR 2 1 2003 | | |
| | Notified counsel by telephone. | | date docketed | | 15 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | | |
| | Copy to _____ | | date mailed notice | | |
| KAM | courtroom deputy's initials | 03 APR 18 PM 1:58 | KAM | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

(Reserved for use by the Court)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION



| | |
|---|---|
| AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee f/b/o Emerald Investments Limited Partnership, and EMERALD INVESTMENTS LIMITED PARTNERSHIP, an Illinois partnership,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY COMPANY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 02 C 5251<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION

Before the court is defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiff Emerald Investments Limited Partnership ("Emerald") is an entity that invests in annuities. To carry out its proprietary trading strategy, Emerald requires a high degree of flexibility in moving its money quickly and freely among investments.

On March 17, 1999, Emerald invested $2.5 million in each of two annuities (the "Annuities"), for a total of $5 million, that

- 2 -

were issued by defendant Allmerica Financial Life Insurance and Annuity Company ("Allmerica"). Plaintiff American National Bank and Trust Company of Chicago holds title in the Annuities for the benefit of Emerald, and Emerald, as beneficial owner, controls, manages, and supervises all investment decisions related to the Annuities. The owner of the Annuities may invest contributions in a variety of investment options in "sub-accounts" managed by Kemper Gateway, primarily stock, bond, and money market mutual funds. Plaintiffs allege that Allmerica advertises to the general public that flexible trading is allowed in the annuity products it sells.

The parties entered into "Kemper Annuity Contracts" (the "Contracts") setting forth the terms and conditions governing the Annuities. The Contracts contain integration clauses stating that "[t]he entire contract consists of this contract, any application attached at issue and any endorsements." (Complaint, Exs. A & B, Contracts, at 18.) The applications were attached, but no endorsements were. Regarding transfers among accounts, the Contracts provide, in relevant part:

> Prior to the Annuity Date, the Owner may transfer amounts among accounts by Written or Telephone Request to the Principal Office. . . .
> . . .
> There is no charge for the first twelve transfers per contract year. A transfer charge of up to $25 may be imposed on each additional transfer.

(Complaint, Exs. A & B, Contracts, at 10.)

In December 2001, Allmerica sent letters regarding the Annuities (the "December Letters") to Emerald that stated in part:

> We are writing to you as the Owner(s) of the Contract(s) referenced above regarding the transfer activity among the investment portfolios (the "Underlying Funds") for the Contract(s). **The Contract(s) is not designed for use by individuals, professional market timing organizations or other entities that do "market timing", programmed transfers, frequent transfers or transfers that are large in relation to the total assets of an Underlying Fund.** Market timing and frequent transfers adversely affect the investment management and investment returns of the Underlying Funds. . . .
>
> . . .
> We have been monitoring the transfer activity in recent months in the Contract(s) referenced above and have concluded that frequent transfers in the Contract(s) are adversely affecting the Underlying Funds and other investors who have invested in these Funds.
> As a result, you must comply with Allmerica's Transfer Rules and Procedures for Market Timers and Frequent Traders. A copy of the Transfer Rules and Procedures for Market Timers and Frequent Traders is enclosed with this letter for your reference. . . .
>
> . . .
> The Transfer Rules and Procedures will become effective as of December 17, 2001. However, any investment executive or adviser authorized to act on your behalf must continue at this time to direct all transfer requests to us by fax transmission by 2:00 PM Eastern Time on Allmerica's Transfer/Payment/Allocation Form.

(Complaint, Ex. C.)

Allmerica's Variable Product Transfer Rules and Procedures for Market Timers and Frequent Traders (the "Transfer Rules"), copies of which were attached to the December Letters, consist of four pages of detailed rules regarding transfers among accounts related to contracts that Allmerica has deemed "Market Timing Contracts." Among other things, the Transfer Rules contain procedures for

transfers via mail, facsimile transmittal, or telephone. The Transfer Rules state that no more than four transfers per Contract will be permitted in any one calendar month. Transfers into sub-accounts that are designated "Limited Access Funds" (a list of which is attached to the Transfer Rules), in which Emerald invests, are permitted only once a month. Moreover, if transfers both into and out of a particular Limited Access Fund are made in the same month, then no further transfers into that Limited Access Fund may be made for a period of six months.

The Transfer Rules state that "[n]o additional payments will be permitted into annuity contracts which are subject to these [Transfer Rules]." (Complaint, Ex. D, at 3.) In addition, the Transfer Rules state that they are subject to change at any time without notice, and that Allmerica "reserves" the right to reject transfers that it deems to be "of such magnitude or otherwise of a nature as to possibly be disruptive to the underlying sub-accounts or funds or otherwise be injurious to other Policyholders or [Allmerica] (even if otherwise made in accordance with these Transfer Rules)." (<u>Id.</u> at 4.)

For approximately the next seven months after receiving the December Letters and Transfer Rules, Emerald did not trade in the Annuities. On April 4, 2002, counsel for Emerald sent a letter to Mark A. Hug, President of Allmerica, informing Mr. Hug that Emerald believed there was no support for the new Transfer Rules and that

the Contracts provided that owners were permitted to make "transfers among accounts." (Complaint, Ex. F.) Counsel for Allmerica responded by reiterating Allmerica's position that Emerald's Annuities were subject to the Transfer Rules. (Id., Ex. G.)

On June 5, 2002, Emerald attempted to "trade on" the Annuities (the complaint does not specify in what manner), but was refused by Allmerica because Emerald had not submitted the Transfer/Payment Allocation Form referred to in the December Letters. On June 26, 2002, Joe Petti of Allmerica's Relationship Management Group left a voice-mail message with counsel for Emerald, stating that Allmerica would not accept any more trades by Emerald unless Emerald executed the Transfer/Payment Allocation Form and accepted the new Transfer Rules. Emerald has since been unable to execute transfers. The total value of the Annuities as of July 2002 was approximately $12.5 million. To remove its money from the accounts, Emerald would be charged a 4% surrender fee.

Plaintiffs contend that Allmerica's imposition of the Transfer Rules and its refusal to allow plaintiffs to make transfers among the Annuities without plaintiffs' acceptance of the Transfer Rules constitute breach of contract and the duty of good faith and fair dealing. Plaintiffs filed this action on July 24, 2002. The complaint sets forth a breach of contract claim (Count I); a promissory estoppel claim, based on the prospectus for the

Annuities (Count II, pled in the alternative); and seeks specific performance and an injunction against Allmerica's enforcement of the Transfer Rules (Count III).

Defendant now moves to dismiss the complaint.

### DISCUSSION

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### A.   Count I -- Breach of Contract

Allmerica argues that plaintiffs' claim for breach of contract fails because there is no term in the Contracts that provides plaintiffs with unrestricted transfer rights. Allmerica is simply incorrect. The Contracts, on their face, do not impose any limits on transfers among accounts. Therefore, plaintiffs adequately state a claim for breach of contract, whether the claimed breach is the imposition of the transfer restrictions or Allmerica's refusal

to perform under the Contracts unless plaintiffs accepted the limitations.[1]

Allmerica contends that the prospectus for the Annuities gave Allmerica the right to change the terms of the contract. The provision on which Allmerica relies, titled "Changes to Comply with Law and Amendments," states:

> The Company reserves the right, without the consent of Owners, to suspend sales of the Contract as presently offered, and to make any change to provisions of the Contract to comply with, or give Owners the benefit of, any federal or state statute, rule or regulation, including but not limited to requirements for annuity contracts and retirement plans under the Code and pertinent regulations or any state statute or regulation.

(Allmerica's Memorandum, Ex. B, at 71.) We need not decide whether to take this language into account when interpreting the Contracts, though, because Allmerica fails to explain how it applies to the alleged breaches of contract. There is no indication that the Transfer Rules were imposed to give plaintiffs "the benefit of" any federal or state statute, rule or regulation. Allmerica argues, in a footnote in its reply, that the Transfer Rules gave plaintiffs the benefit of Securities and Exchange Commission "regulatory pronouncements," but fails to develop this argument any further.

---

[1] At this point, we are only concerned with whether the complaint states a claim, and it does. Any claimed limit on the number of transfers plaintiffs could make would have to be derived from parol evidence, if admissible.

We do not believe that the duty of good faith and fair dealing is at issue here. That duty requires a party "vested with contractual discretion" to exercise it reasonably. Diamond v. United Food & Commercial Workers Union Local 881, 768 N.E.2d 865, 871 (Ill. App. Ct. 2002). The Contracts did not vest Allmerica with discretion regarding transfers.

Allmerica views the prospectus provision as a reservation of the right to change the Contracts for any reason, but that is not what the prospectus says, and it is not clear that the reservation of rights applies in this case.

## B. Count II -- Promissory Estoppel

In Count II (which is pled in the alternative), plaintiffs allege that "Allmerica expressly promised and disclosed to Emerald in the prospectus that Emerald would be guaranteed unrestricted transfer rights and did not reserve for themselves the unilateral right to limit or modify the transfer rights." (Complaint, ¶ 26.)

"An action in promissory estoppel must assert the following elements: (1) an unambiguous promise; (2) reliance thereon by the party to whom the promise is made; (3) the reliance is expected and foreseeable by the party making the promise; and (4) the party to whom the promise is made in fact relies upon it to his or her injury." Bolden v. General Accident, Fire & Life Assurance Corp., 456 N.E.2d 306, 308 (Ill. App. Ct. 1983). Allmerica contends that plaintiffs fail to allege a promise or reliance upon a promise.

Plaintiffs fail to specify in the complaint which provisions of the lengthy prospectus they view as "promises," and they also fail to allege that they relied on these specific promises. Therefore, Count II is dismissed with leave to replead if plaintiffs can allege specific promises and reliance.

**C.    Count III -- Injunctive Relief/Specific Performance**

In Count III, plaintiffs seek injunctive relief and specific performance "[t]o the extent that there is no adequate remedy at law." (Complaint, ¶ 31.) They also allege that "[g]iven Allmerica's conduct and positions, without injunctive relief and specific performance, Emerald is at risk to suffer irreparable harm." (Id., ¶ 32.) At the outset, we note that injunctive relief and specific performance are remedies, not independent causes of action as they are pled in the complaint. See LaSalle Nat'l Bank v. Metropolitan Life Ins. Co., 18 F.3d 1371, 1376 (7th Cir. 1994) (specific performance); Noah v. Enesco Corp., 911 F. Supp. 305, 307 (N.D. Ill. 1995) (injunctive relief). Nonetheless, we will address these claims because the allegations are inadequate as to both types of relief.

**1.    Injunctive Relief**

To state a claim for injunctive relief, a plaintiff must plead that (1) no adequate remedy at law exists; (2) plaintiff will suffer irreparable harm absent injunctive relief; (3) the irreparable harm plaintiff will suffer absent injunctive relief outweighs the irreparable harm defendant will suffer if relief is granted; (4) the plaintiff has a reasonable likelihood of prevailing on the merits; and (5) the injunction will not harm the public interest. See Somerset House, Inc. v. Turnock, 900 F.2d 1012, 1014-15 (7th Cir. 1990).

Plaintiffs' claim for injunctive relief fails for a number of reasons. Plaintiffs do not actually allege that no adequate remedy at law exists, nor do they allege that they <u>will</u> suffer irreparable harm absent an injunction, nor do they set forth minimal facts indicating a threat of irreparable harm. They also fail to allege a likelihood of success on the merits and that an injunction would not harm the public interest. Therefore, plaintiffs' claim for injunctive relief must be dismissed; it fails to put Allmerica on notice of the bases for the requested relief. Plaintiffs may seek leave of court to replead the claim (as a remedy for breach of contract or another independent cause of action) should they discover facts that would allow them to state a claim for injunctive relief.

## 2.   <u>Specific Performance</u>

Allmerica also asserts that plaintiffs have not stated a claim for specific performance of the Contracts. "In order to be entitled to specific performance, plaintiff must allege and prove the following elements: (1) the existence of a valid, binding, and enforceable contract; (2) plaintiff has complied with the terms of his contract or is ready, willing, and able to perform his part of the contract; and (3) defendant failed or refused to perform his part of the contract." <u>Dixon v. City of Monticello</u>, 585 N.E.2d 609, 618 (Ill. App. Ct. 1991). In addition, specific performance generally will not be granted where there is an adequate remedy at

law. See John O. Schofield, Inc. v. Nikkel, 731 N.E.2d 915, 926 (Ill. App. Ct. 2000).

Plaintiffs have pled the existence of the Contracts, that they have complied with them and are ready to perform their part of them, and that Allmerica has failed to perform its part of the Contracts. However, as discussed supra, they fail to allege that they have no adequate remedy at law; therefore, the claim for specific performance must be dismissed. As with the claim for injunctive relief, plaintiffs may seek leave of court to replead the specific performance claim (as a remedy for breach of contract or another independent cause of action) should they discover facts that would allow them to state such a claim.

### D. Attorney's Fees

Defendant moves to strike the request for attorney's fees in the prayer for relief in Count III. Because we are dismissing Count III, defendant's request is moot.

### CONCLUSION

Defendant's motion to dismiss the complaint is granted in part and denied in part. The motion is denied as to Count I of the complaint. The motion is granted as to Counts II and III of the complaint.

Plaintiffs are given until April 30, 2003, to replead Count II (the promissory estoppel claim) if they can allege specific promises and reliance.

DATE:     April 17, 2003

ENTER:

_____

John F. Grady, United States District Judge