# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 c 5251 | **DATE** | December 11, 2003 |
| **CASE TITLE** | American National Bank And Trust Company of Chicago, et al. v. Allmerica Financial Life Insurance And Annuity Company | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]

Plaintiffs' motion to dismiss the counterclaim is granted. [29-1] Plaintiffs' motion for summary judgment on the issue of breach is granted in part and denied in part. [17-1] The issue of damages for this breach remains. There is a genuine issue of fact as to whether Allmerica breached the contracts by refusing to permit trades after the transfer rules were imposed, and discovery on this issue is granted and should be concluded by 2/13/04. Status hearing set for 2/18/04 at 11:00 a.m.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| X | Notices MAILED by judge's staff. | | | | |
| | Notified counsel by telephone. | | DEC 1 2 2003 date docketed | | 57 |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | date mailed notice | | |
| | Copy to _____ | | | | |
| KAM | courtroom deputy's initials | | | KAM | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

(Reserved for use by the Court)

# ORDER

Plaintiffs' motion to dismiss the counterclaim is granted. Plaintiffs' motion for summary judgment on the issue of breach is granted in part and denied in part. We hold that there is no genuine issue that Allmerica breached the Contracts by imposing the Transfer Rules. (The issue of damages for this breach remains.) However, there is a genuine issue of fact as to whether Allmerica breached the Contracts by refusing to permit trades after the Transfer Rules were imposed, and discovery on this issue will be allowed. It should be concluded by February 13, 2004, and the case is set for a status conference on February 18, 2004, at 11:00 a.m.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee f/b/o Emerald Investments Limited Partnership, and EMERALD INVESTMENTS LIMITED PARTNERSHIP, an Illinois partnership, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 02 C 5251 |
| ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Before the court are two motions: (1) plaintiffs' motion to dismiss defendant's counterclaim; and (2) plaintiffs' motion for summary judgment. For the reasons explained below, the motion to dismiss is granted, and the motion for summary judgment is granted in part and denied in part.

### BACKGROUND

The undisputed facts of this case, except where noted, are as follows. Plaintiff Emerald Investments Limited Partnership ("Emerald") is an entity that invests in annuities. Emerald states that it has a proprietary trading strategy that requires a high degree of flexibility in moving its money quickly and freely among investments.

57

On March 17, 1999, Emerald invested $2.5 million in each of two annuities (the "Annuities"), for a total of $5 million, that were issued by defendant Allmerica Financial Life Insurance and Annuity Company ("Allmerica"). Plaintiff American National Bank and Trust Company of Chicago, which was acquired by Bank One, NA after the complaint in this case was filed, holds title in the Annuities for the benefit of Emerald.[1] Emerald, as beneficial owner, controls, manages, and supervises all investment decisions related to the Annuities.[2] The owner of the Annuities may invest contributions in a variety of investment options in "sub-accounts" managed by Kemper Gateway, primarily stock, bond, and money market mutual funds.

The parties entered into "Kemper Annuity Contracts" (the "Contracts") setting forth the terms and conditions governing the Annuities. The Contracts contain integration clauses stating that "[t]he entire contract consists of this contract, any application attached at issue and any endorsements." (Plaintiffs' Statement of Material Facts, Exs. B & C, Contracts, at 18.) The applications were attached, but no endorsements were. Regarding transfers among accounts, the Contracts provide, in relevant part:

---

[1] Plaintiffs should file an amendment to the complaint to change the name of the trustee of the Annuities.

[2] We will refer to "plaintiffs" in the plural, but sometimes simply as "Emerald."

> Prior to the Annuity Date, the Owner may transfer amounts among accounts by Written or Telephone Request to the Principal Office. . . .
>
> . . .
>
> There is no charge for the first twelve transfers per contract year. A transfer charge of up to $25 may be imposed on each additional transfer.

(Plaintiffs' Statement of Material Facts, Exs. B & C, Contracts, at 10.)

In December 2001, Allmerica sent letters regarding the Annuities (the "December Letters") to Emerald that stated in part:

> We are writing to you as the Owner(s) of the Contract(s) referenced above regarding the transfer activity among the investment portfolios (the "Underlying Funds") for the Contract(s). **The Contract(s) is not designed for use by individuals, professional market timing organizations or other entities that do "market timing", programmed transfers, frequent transfers or transfers that are large in relation to the total assets of an Underlying Fund.** Market timing and frequent transfers adversely affect the investment management and investment returns of the Underlying Funds. . . .
>
> . . .
>
> We have been monitoring the transfer activity in recent months in the Contract(s) referenced above and have concluded that frequent transfers in the Contract(s) are adversely affecting the Underlying Funds and other investors who have invested in these Funds.
> As a result, you must comply with Allmerica's Transfer Rules and Procedures for Market Timers and Frequent Traders. A copy of the Transfer Rules and Procedures for Market Timers and Frequent Traders is enclosed with this letter for your reference. . . .
>
> . . .
>
> The Transfer Rules and Procedures will become effective as of December 17, 2001.

(Plaintiffs' Statement of Material Facts, Ex. D.)

Allmerica's "Variable Product Transfer Rules and Procedures For Market Timers and Frequent Traders" (the "Transfer Rules"),

copies of which were attached to the December Letters, consists of four pages of detailed rules regarding transfers among accounts related to contracts that Allmerica has deemed "Market Timing Contracts." Among other things, the Transfer Rules contain procedures for transfers via mail, facsimile transmittal, or telephone. The Transfer Rules state that no more than four transfers per Contract will be permitted in any one calendar month. Transfers into sub-accounts that are designated "Limited Access Funds" (a list of which is attached to the Transfer Rules), in which Emerald invests, are permitted only once a month. Moreover, if transfers both into and out of a particular Limited Access Fund are made in the same month, then no further transfers into that Limited Access Fund may be made for a period of six months.

The Transfer Rules state that "[n]o additional payments will be permitted into annuity contracts which are subject to these [Transfer Rules]." (Plaintiffs' Statement of Material Facts, Ex. E, at 3.) In addition, the Transfer Rules state that they are subject to change at any time without notice, and that Allmerica "reserves" the right to reject transfers that it deems to be "of such magnitude or otherwise of a nature as to possibly be disruptive to the underlying sub-accounts or funds or otherwise be injurious to other policyholders or [Allmerica] (even if otherwise made in accordance with these Transfer Rules and Procedures)." (Id. at 4.)

For several months after receiving the December Letters and Transfer Rules, Emerald did not trade in the Annuities. On April 4, 2002, counsel for Emerald sent a letter to Mark A. Hug, President of Allmerica, informing Mr. Hug that Emerald believed there was no support for the new Transfer Rules and that the Contracts provided that owners were permitted to make "transfers among accounts." (Plaintiffs' Statement of Material Facts, Ex. G.) Counsel for Allmerica responded by reiterating Allmerica's position that Emerald's Annuities were subject to the Transfer Rules. (Plaintiffs' Statement of Material Facts, Ex. H.)

On June 24, 2002, Richard Marks, in-house counsel for Emerald, called Allmerica "to discuss its refusal to execute trade instructions received from Emerald" and was referred to Mr. Joseph Petty, a manager at Allmerica. (Plaintiffs' Statement of Material Facts, Ex. I, Declaration of Richard Marks, ¶ 4.) On June 26, 2002, Mr. Petty left a voice-mail message with counsel for Mr. Marks, stating that "Allmerica would not execute any trade instructions received from Emerald until Emerald agreed to execute the [Transfer/Payment Allocation Form] for each trade." Mr. Marks states that "[s]ince the Form requires contract holders to agree that Allmerica 'reserve[s] the right to restrict transfers,' Emerald refused." (Id., ¶ 5.)

Mr. Petty, however, states that the annuity owner merely "had not provided the proper paper work for Allmerica to make the

requested transfers." (Defendant's Response to Plaintiffs' Statement of Material Facts, Ex. 3, Affidavit of Joseph M. Petty, ¶ 8.) Mr. Petty does not specify which paperwork was required, nor does he state what he told Mr. Marks in the voice-mail message. Apparently, according to Allmerica, the form was required only for transfer requests via facsimile and transfers by non-annuity owners and Emerald could have completed a transfer via a mail or telephone request by an annuity owner.

According to Emerald, Allmerica rejected Emerald's subsequent attempts to trade unless Emerald accepted the Transfer Rules. (Plaintiffs' Statement of Material Facts, Ex. A, Declaration of Rob Rubin, ¶ 10.) Allmerica, on the other hand, submits evidence that it did process transfers on four dates--June 27, July 1, July 24, and August 2, 2002.[3] (Defendant's Response to Plaintiffs' Statement of Material Facts, Ex. 5, Affidavit of Donna Gould, ¶ 7 & Ex. A.)

The total value of the Annuities as of September 2002 was approximately $12.5 million. (Declaration of Rob Rubin, ¶ 10.) To remove its money from the accounts, plaintiffs are subject to a surrender fee.[4]

---

[3] The August 2 transfer occurred after plaintiffs filed this lawsuit.

[4] The parties pay scant attention to this fact in the briefs, but evidently, since the filing of this case plaintiffs have withdrawn a large portion of the money in the Annuities and have been assessed this surrender fee.

Plaintiffs filed this action on July 24, 2002. The complaint, as originally filed, set forth a breach of contract claim (Count I); a promissory estoppel claim, based on the Prospectus for the Annuities (Count II, pled in the alternative); and sought specific performance and an injunction against Allmerica's enforcement of the Transfer Rules (Count III). Allmerica's motion to dismiss the complaint was denied as to Count I and granted as to Counts II and III. American Nat'l Bank & Trust Co. of Chicago v. Allmerica Fin. Life Ins. & Annuity Co., No. 02 C 5251, 2003 WL 1921815 (N.D. Ill. Apr. 21, 2003).[5] Plaintiffs were given leave to replead Count II and did so. Allmerica has brought a counterclaim asserting that plaintiffs breached the contractual duty of good faith and fair dealing.

Plaintiffs now move for summary judgment on Count I of the complaint. They also move to dismiss Allmerica's counterclaim.

## DISCUSSION

### A. Motion to Dismiss Allmerica's Counterclaim

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). Dismissal is appropriate only if "'it is clear that no relief could be granted

---

[5] As to Count I, we held that plaintiffs adequately stated a claim for breach of contract because the Contracts, on their face, do not impose any limits on transfers among accounts.

under any set of facts that could be proved consistent with the allegations.'" Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

Plaintiffs argue that Allmerica's claim for breach of the duty of good faith and fair dealing fails for two main reasons: (1) the duty does not enable a party to read an obligation into a contract that does not exist; and (2) Allmerica fails to allege any injury to itself as a result of the claimed breach.[6]

We agree with plaintiffs that Allmerica's counterclaim fails because it does not adequately allege injury as a result of the claimed breach. Damages to "the underlying portfolios" and "Allmerica's other contract owners" are alleged (Counterclaim, ¶¶ 9, 11-12), but plaintiffs point out and Allmerica does not dispute that the portfolios are not managed or owned by Allmerica. Allmerica's contention that the portfolios are "products" and that

---

[6] Plaintiffs also contend, in their reply brief only and not in their principal memorandum, that "[s]ince 2001, Illinois law has definitively barred claims based upon an implied duty of good faith and fair dealing." (Reply at 1.) Allmerica was granted leave to file a surreply brief to address this new argument. Allmerica contends that the opinions cited by plaintiffs in support of this argument are distinguishable because the courts there held that no independent cause of action in tort exists for breach of the duty of good faith and fair dealing. We agree. Plaintiffs' claim is based in contract and not in tort, and that type of claim for breach of the duty of good faith and fair dealing still exists under Illinois law. See, e.g., Puthusserill v. Shell Oil Co., No. 02 C 2289, 2003 WL 22494790, at *2-3 (N.D. Ill. Nov. 4, 2003) (recognizing that, in Illinois, "a party to a contract can assert a claim for breach of a contractual provision conferring discretion when the party having the discretion fails to exercise it in good faith.").

"any damage to those products damaged Allmerica" is unpersuasive. Accordingly, Allmerica's counterclaim must be dismissed.[7]

## B. **Motion for Summary Judgment on Count I**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

---

[7] Because we hold that Allmerica's counterclaim fails to allege injury to Allmerica, we need not address plaintiffs' other arguments for dismissal of the counterclaim.

Plaintiffs contend that Allmerica's unilateral imposition of the Transfer Rules and its subsequent refusal to execute trades constituted breaches of the Contracts and thus that plaintiffs are entitled to summary judgment on the issue of breach. (Plaintiffs acknowledge that should we grant summary judgment, the nature and amount of relief to which they are entitled would still be outstanding issues.)

Allmerica first points out that no discovery has been conducted and requests discovery pursuant to Federal Rule of Civil Procedure 56(f), which provides that a non-movant may avoid summary judgment by stating in an affidavit why it cannot currently present facts showing a genuine issue for trial. According to Allmerica, discovery is necessary on material issues of fact regarding whether the Contracts were breached and, if they were breached, whether the breach proximately caused plaintiffs' purported damages. Because plaintiffs are only seeking summary judgment on the issue of whether the Contracts were breached, we need not discuss, at this juncture, discovery on issues relating to damages. (In other words, we agree that discovery on damages will be necessary in the event that we grant plaintiffs' motion.)

Allmerica submits the affidavit of Paul E. Chronis, one of its attorneys. Mr. Chronis maintains that discovery is necessary on the following breach-related issues (as organized by this court):

Breach by Virtue of the Imposition of Transfer Rules
1)     Plaintiffs' trading strategy
2)     The terms of the parties' agreement
3)     Whether plaintiffs "knew that the Annuity Contracts
       and the Underlying Funds were not designed for
       market timing" or frequent large transfers
4)     Whether plaintiffs were aware of an "unsigned draft
       letter" indicating that plaintiffs would be allowed
       to "do as many transfer[s] as [they] wish[ed]"
5)     Pre-contract discussions between an unaffiliated
       broker-dealer and Emerald relating to the Contracts

Breach by Virtue of the Refusal to Execute Trades
6)     Whether Allmerica refused to execute Emerald's
       trades.

Allmerica's Affirmative Defense
7)     Whether Emerald was acting in good faith when it
       made transfers.

(Defendant's Response to Plaintiffs' Statement of Material Facts,

Ex. 1, Affidavit of Paul E. Chronis.)

     We believe that item 1, plaintiffs' trading strategy, is

relevant only to damages and not to breach. Allmerica attempts to

frame the breach issue as whether Allmerica prohibited Emerald from

using its trading strategy, but the real issue is merely whether

significant limitations were imposed on plaintiffs' trading that

the Contracts did not contain. Nor does Allmerica need discovery

on item 2, the terms of the parties' agreement. The terms of the

agreement are set forth in the Contracts (which Allmerica already

has), which as set forth supra expressly state that "[t]he entire

contract consists of this contract, any application attached at

issue and any endorsements." The contract does not incorporate the

terms of the Prospectus (which Allmerica also has, in any event).

Nor does the contract contain any ambiguities that would allow us to consider parol evidence.[8] Therefore, discovery on items 3-5 would be unnecessary because we could not consider such evidence.

A more extensive discussion of items 6 and 7 is required. Plaintiffs submit evidence that after imposing the Transfer Rules, Allmerica refused all of Emerald's subsequent attempts to trade unless Emerald agreed to the Transfer Rules. (Plaintiffs' Statement of Material Facts, Ex. A, Declaration of Rob Rubin; Ex. I, Declaration of Richard Marks.) Allmerica, on the other hand, submits evidence that it processed 4 transfers in the summer of 2002 (in addition to the evidence from Mr. Petty described supra). (Defendant's Response to Plaintiffs' Statement of Material Facts, Ex. 5, Affidavit of Donna Gould, ¶ 7 & Ex. A.) Accordingly, Allmerica has shown that there is a genuine issue as to whether it breached the contract by refusing any transfers by Emerald after the imposition of the Transfer Rules, and discovery on this issue is necessary.[9]

Item 7 relates to Allmerica's affirmative defense that plaintiffs breached the contract by violating the duty of good faith and fair dealing. Allmerica's theory is that this violation

---

[8] Illinois follows the "four corners" rule, which provides that "[i]f the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence." Air Safety, Inc. v. Teachers Realty Corp., 706 N.E.2d 882, 884 (Ill. 1999).

[9] It is unclear to us, and it would be useful to know, whether plaintiffs ever requested any specific transfers, other than the four transfers referred to, after the Transfer Rules were imposed.

was a material breach by plaintiffs that justified Allmerica's non-performance of the Contracts. As noted in our earlier opinion in this case, the duty of good faith and fair dealing requires a party vested with contractual discretion to exercise it reasonably, not "arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties." Diamond v. United Food & Commercial Workers Union Local 881, 768 N.E.2d 865, 871 (Ill. App. Ct. 2002).

We agree with Allmerica that pursuant to the express terms of the Contracts, Emerald had the contractual discretion to make transfers and therefore was required to exercise that discretion reasonably. Allmerica, however, has not demonstrated a genuine issue of material fact that Emerald breached its obligation to exercise that discretion reasonably. Nor do we believe that Allmerica has shown or could show that there is any possible additional discovery on this issue that it does not already have by which it could show a genuine issue of material fact.

The counterclaim alleges that plaintiffs breached the duty by making transfers "in a manner that was disruptive and injurious to the underlying portfolios and Allmerica's other contract owners" and by "making short-term transfers in and out of portfolios in contravention of those portfolios [sic] stated investment policies and objectives." (Counterclaim, ¶¶ 9, 10.) To determine whether plaintiffs' transfers were inconsistent with the parties'

reasonable expectations, we primarily look to the terms of the
Contracts, which do not contain any provisions regarding 1) the
possible effects of transfers on third parties; 2) long-term versus
short-term transfers; or 3) the portfolios' investment policies and
objectives.

The Prospectus for the Annuities that was in effect at the
time the Contracts were entered into is also relevant to the
parties' reasonable expectations (even though it is not a part of
the Contracts.)[10] Unfortunately for Allmerica, the Prospectus does
not contain any prohibitions on transfers that would be
"disruptive" or "injurious" to third parties, nor does it prohibit
short-term transfers, limit the number of possible transfers, or
state anything about transfers that contravene the portfolios'
policies and objectives. Moreover, statements in the Prospectus
regarding what each portfolio is "designed" for (for example, one
portfolio is "designed for investors with approximately a 10+ year
investment horizon," Prospectus at 33) do not supply any sort of
limit on the number of transfers or the nature of transfers.

---

[10] We do not consider the "Supplemental" Prospectus that was issued after
the Contracts were entered into, because that does not shed light on the parties'
reasonable expectations at the time of contracting.
    We reject Allmerica's argument that plaintiffs are _bound_ by the terms of
the Prospectus. Allmerica contends that it would be "impractical" to expect
Allmerica to "spell out in the Annuity Contract all of the various rules,
regulations and procedures applicable to purchasing and selling the Underlying
Funds." (Defendant's Response at 8 n.9.) We disagree. Allmerica could have
incorporated by reference any or all of the terms of the Prospectus into the
Contracts. It did not do so; therefore, plaintiffs are not bound by the
Prospectus.

In response to plaintiffs' motion, Allmerica might have submitted evidence as to any industry standards regarding transfers at the time the Contracts were executed. It did not, and discovery is not necessary--if such evidence existed, Allmerica would already have it and would have submitted it. Allmerica has failed to establish that there is a genuine issue of material fact, nor has it shown a need for discovery, with respect to its affirmative defense.

We return to the consideration of summary judgment on the issue of breach by the imposition of the Transfer Rules. Allmerica first contends that the Transfer Rules do not constitute a breach because they "merely modify the timing and procedural requirements for executing transfers." (Defendant's Response at 7.) The same argument was made in support of Allmerica's motion to dismiss, which we denied. Allmerica is incorrect. The Transfer Rules do more than modify timing and procedure requirements; they impose very strict limitations on the number of permitted transfers.

Allmerica also asserts that it was authorized to impose the Transfer Rules by virtue of the following reservation of rights in the Contracts:

> The Company reserves the right, subject to compliance with applicable law, to add to, delete from, or substitute for the shares of a Fund that are held by the Sub-Accounts or that the Sub-Accounts may purchase. The Company also reserves the right to eliminate the shares of any Fund no longer available for investment or if the Company believes further investment in the Fund is no

longer appropriate for the purposes of the Sub-Accounts.
(Plaintiffs' Statement of Material Facts, Exs. B & C, Contracts, at
18.) According to Allmerica, its authority to take the "lesser
step" of "restrict[ing] Plaintiffs' access to certain Underlying
Funds" was "implicit within the [Contracts'] broad grant of power
to completely remove an Underlying Fund as an investment option."
(Defendant's Response at 8.) The problem with this argument is
that the reservation of rights deals with the availability of
certain types of funds for investment, while the Transfer Rules
restrict the frequency and number of transfers among funds.
Because the latter is not logically encompassed by the former, we
reject Allmerica's argument.[11]

Another argument made by Allmerica is that, should we find
that there is no genuine issue that it breached the Contracts by
imposing the Transfer Rules, we should nonetheless decline to
enforce the Contracts because unrestricted trading is "violative of
public policy." (Defendant's Response at 9.) Allmerica contends
that "market timing is an activity that both the SEC and the courts
have determined is harmful to other shareholders in the Underlying
Funds. As such, it is an activity that violates public policy."
(Id. at 10.)

---

[11] New York State Liquor Authority v. Bellanca, 452 U.S. 714 (1981), cited
by Allmerica, is not to the contrary. In Bellanca, the Supreme Court held that
the state of New York's power to prohibit the sale of liquor pursuant to the
Twenty-First Amendment included the lesser power to prohibit the sale of liquor
at topless dancing establishments. Unlike the instant case, the nature of the
greater and lesser powers in that case were identical--the power to prohibit the
sale of liquor.

"As a general rule, courts will not enforce a private agreement which is contrary to public policy." <u>Swavely v. Freeway Ford Truck Sales, Inc.</u>, 700 N.E.2d 181, 187 (Ill. App. Ct. 1998). "The question of whether a contract is enforceable under the public policy of [Illinois] is a conclusion of law." <u>Id.</u> Contracts are not void as against public policy "unless they are clearly contrary to what the [Illinois] constitution, statutes or court decisions have declared to be the public policy or unless they are 'manifestly injurious to the public welfare.'" <u>Id.</u>; <u>see also</u> <u>J & K Cement Constr., Inc. v. Montalbano Builders, Inc.</u>, 456 N.E.2d 889, 903 (Ill. App. Ct. 1983) (considering only the Illinois constitution, statutes, and judicial precedent and not those of other states).

Allmerica submits a great deal of material regarding market timing, but it fails to cite any Illinois constitutional or statutory provision or judicial decision that supports its position that a contract whose terms implicitly permit market timing is void as against public policy. We grant that there has been recent attention in the industry to the issue of market timing (as evidenced by the letter from an SEC staff member that Allmerica submits), but there is no indication that Illinois currently has a public policy against contracts that allow unrestricted trading in annuities. Nor has Allmerica demonstrated, or even argued, that contracts permitting unrestricted transfers among sub-accounts in

annuities are "manifestly injurious to the public welfare." Accordingly, Allmerica's public policy argument is rejected.

In conclusion, none of Allmerica's arguments against summary judgment on the issue of breach by imposition of the Transfer Rules are persuasive. Allmerica has failed to show a genuine issue of material fact, and it has failed to show that discovery would be likely to develop any genuine issue of material fact. However, Allmerica has shown a genuine issue of material fact on the issue of subsequent breach by the refusal to execute transfers.

## CONCLUSION

Plaintiffs' motion to dismiss the counterclaim is granted. Plaintiffs' motion for summary judgment on the issue of breach is granted in part and denied in part. We hold that there is no genuine issue that Allmerica breached the Contracts by imposing the Transfer Rules. (The issue of damages for this breach remains.) However, there is a genuine issue of fact as to whether Allmerica breached the Contracts by refusing to permit trades after the Transfer Rules were imposed, and discovery on this issue will be allowed. It should be concluded by February 13, 2004, and the case is set for a status conference on February 18, 2004, at 11:00 a.m.

DATE:       December 11, 2003

ENTER:

John F. Grady, United States District Judge