**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee f/b/o Emerald Investments Limited Partnership, and EMERALD INVESTMENTS LIMITED PARTNERSHIP, an Illinois partnership,<br><br>        Plaintiffs,<br><br>        v.<br><br>ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY COMPANY,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 02 C 5251<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

Pending before the court is a motion by plaintiff Emerald Investments Limited Partnership ("Emerald") to "compel answers to deposition questions regarding the "July Restrictions." The motion arises out of a dispute between the parties as to whether certain information sought by plaintiff is protected by the attorney-client privilege.

A brief review of the procedural history of the case will be helpful. The following is taken from our Memorandum Opinion of December 11, 2003, granting partial summary judgment to Emerald.

> Plaintiff Emerald Investments Limited Partnership ("Emerald") is an entity that invests in annuities. Emerald states that it has a proprietary trading strategy that requires a high degree of flexibility in moving its money quickly and freely among investments.

On March 17, 1999, Emerald invested $2.5 million in each
of two annuities (the "Annuities"), for a total of $5
million, that were issued by defendant Allmerica
Financial Life Insurance and Annuity Company
("Allmerica"). ... The owner of the Annuities may invest
contributions in a variety of investment options in "sub-
accounts" managed by Kemper Gateway, primarily stock,
bond, and money market mutual funds.

The parties entered into "Kemper Annuity Contracts" (the
"Contracts") setting forth the terms and conditions
governing the Annuities. ... Regarding transfers among
accounts, the Contracts provide, in relevant part:

> Prior to the Annuity Date, the Owner may
> transfer amounts among accounts by Written or
> Telephone Request to the Principal Office....
> . . .
> There is no charge for the first twelve
> transfers per contract year. A transfer
> charge of up to $25 may be imposed on each
> additional transfer.

(Mem. Op. at 1-3).

In December 2001, having concluded that Emerald was engaged in

a "market timing" strategy, Allmerica adopted a set of "Transfer

Rules" which severely limited the number of transfers that Emerald

could make to and from the international sub-accounts of its

annuity contracts. Emerald then filed this suit, alleging breach

of contract by Allmerica in that the annuity contracts contained no

provision authorizing such limitations. We granted summary

judgment to Emerald on this liability issue.

Thereafter, at the court's request, Emerald filed a memorandum

outlining its theory of damages. The memorandum disclosed that

Emerald would be seeking very substantial damages on the basis

that, but for Allmerica's breach, Emerald would have been able to earn profits from its trading strategy into the almost indefinite future. An expert retained by Emerald estimated the damages at $150,000,000.

The next development was Allmerica's notice to Emerald that, as of July 30, 2004, the Scudder International Funds would no longer be available for investment by Emerald. As authority for this Restriction, Allmerica relied upon provisions of the annuity contracts different from those considered in our earlier summary judgment ruling. Because transfers into and out of the international funds are an integral part of Emerald's trading strategy, Allmerica argued that Emerald's damages should be cut off as of July 30, 2004.

Emerald challenged the right of Allmerica to impose these "July Restrictions," arguing that the contractual provisions relied on by Allmerica conferred no such authority. We disagreed, however, and held that Emerald's damages would be cut off as of July 30, 2004, <u>unless</u> Emerald could prove that the July Restrictions were imposed in bad faith. We held, in other words, that the contractual provisions in question did give Allmerica discretion to eliminate trading in the international sub-accounts, but that the implied covenant of good faith and fair dealing required that the discretion be exercised in good faith.

Emerald then filed an amended complaint, including an allegation that the July Restrictions, which purported to be for the protection of Allmerica's other investors from the ill effects of market timing, were actually imposed for the purpose of limiting Emerald's damages. This latter purpose, in Emerald's view, would amount to bad faith. That, in turn, would invalidate the Restrictions and remove any limit on Emerald's damage period.

The deposition questions at issue have to do with the communications between Allmerica's executives and its in-house counsel leading up to the adoption of the July Restrictions. The Restrictions were actually drafted by in-house counsel.

Emerald wants to know what was said in communications between counsel and corporate officers concerning the reasons for the July Restrictions. It obviously hopes that the answers it seeks would disclose that limiting plaintiff's damages was the primary motivation.

Allmerica contends that the communications in question are protected by the attorney-client privilege. Emerald argues that the privilege has been waived by Allmerica's having placed its good faith at issue in the case. Allmerica denies that it has raised any issue as to its good faith.

It is true that as a general proposition a party will waive the attorney privilege when it places at issue its communications with its attorney in connection with any claim or defense it

raises.  Emerald contends that Allmerica has done exactly that by relying on the additional contractual provisions to impose the July Restrictions.  Because the Restrictions could only be valid if Allmerica was exercising its contractual discretion in good faith, Allmerica is necessarily raising the issue of good faith by relying on the July Restrictions.  Allmerica counters that it is Emerald which has raised the issue of good faith by alleging bad faith in the amended complaint, an allegation on which Emerald has the burden of proof.

We agree with Allmerica.  By denying that it acted in bad faith it has done nothing to waive the attorney-client privilege concerning communications which might be relevant to the issue of bad faith.  Illinois law applies to privilege questions in this diversity case, and we are satisfied that Illinois law would support Allmerica's position.  The Illinois cases have not articulated the "at issue" rule as clearly as some of the federal cases, but we believe the Illinois Supreme Court, when presented with this specific question, would follow the reasoning of the Third Circuit in <u>Rhone-Poulenc Rorer Inc. v. Home Indem. Co.</u>, 32 F.3d 851 (3rd Cir. 1994), considered a leading case on the subject:

> There is authority for the proposition that a party can waive the attorney client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation.  For example, a client may waive the privilege as to certain communications with a lawyer by filing a malpractice action against the lawyer.  A defendant may also waive the privilege by asserting reliance on the advice of counsel as an affirmative

defense. In an action for patent infringement, where a party is accused of acting willfully, and where that party asserts as an essential element of its defense that it relied upon the advice of counsel, the party waives the privilege regarding communications pertaining to that advice.

In these cases, the client has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue. Courts have found that by placing the advice in issue, the client has opened to examination facts relating to that advice. Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.

Id. at 863 (citations omitted).

A similar ruling is found in the Seventh Circuit case of Lorenz v. Valley Forge Ins. Co., 815 F.2d 1095 (7th Cir. 1987). The plaintiffs alleged that the defendant insurance company had denied their fire insurance claim in bad faith. The company had offered to settle the claim, and one issue was whether the settlement offer was made in bad faith. The magistrate judge found that the company had waived its attorney-client privilege "by voluntarily injecting its good faith in the settlement negotiations as a material issue in the case." Id. at 1098. The Court of Appeals reversed, applying Indiana law. We believe the Illinois Supreme Court would agree with the following analysis:

To waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case. Most often, this occurs through the use of an affirmative defense. See, e.g., United States v. Exxon, 94 F.R.D.

246 (Dist. Ct. 1981) (good faith reliance on government regulations); <u>United States v. Mierzwicki</u>, 500 F. Supp. 1331 (Dist. Ct. Md.1980) (reliance on advice of attorney); <u>Hearn v. Rhay</u>, 68 F.R.D. 574 (E.D. Wash. 1975) (qualified immunity). It is the nature of an affirmative defense to raise a "matter outside the scope of plaintiff's prima facie case." 2A J. MOORE, MOORES FEDERAL PRACTICE ¶ 8.19[1] (2d ed. 1984); <u>Rice v. Grant County Bd. of Comm'rs et al.</u>, 472 N.E.2d 213 (Ind. App. 1984).

Our examination of the record reveals that Valley Forge did nothing more than deny the plaintiffs' allegations that it had failed to pay after the suit was filed and had improperly "packaged" the punitive damages claim with the compensatory claim. Valley Forge did not assert that the offer to settle was made in good faith--it did not have to. Valley Forge sought to show only that post-filing offers had been made, and, to counter any negative inference that might be drawn from the offer to settle both claims together, Valley Forge sought to show that the idea to "package" the two claims had originated with the plaintiffs' attorney. Offering to show that a post-filing offer of settlement had been made does not inject a new legal or factual issue into the case. The settlement offer is merely a new form of evidence to counter an issue injected by the plaintiffs. Similarly, the testimony of Valley Forge's former attorney, regarding the origin of the decision to "package" the offer of settlement, does not inject a new legal issue, but is merely another method of proof. Therefore, neither the settlement negotiations nor the testimony of McInerey can provide a basis for finding waiver under the "voluntary injection" doctrine.

<u>Id.</u> The following Illinois cases are consistent with these statements from <u>Rhone-Poulenc</u> and <u>Lorenz</u>: <u>Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc.</u>, 727 N.E.2d 240, 244-46 (Ill. 2000); <u>Hayes v. Burlington N. & Santa Fe Ry.</u>, 752 N.E.2d 470, 475-76 (Ill. App. Ct. 2001); <u>see</u> <u>also</u> <u>Dexia Credit Local v. Rogan</u>, No. 02 C

8288, 2004 WL 3119026, at *7-8 (N.D. Ill. Dec. 21, 2004)
(discussing Illinois law).

Emerald relies primarily on the Illinois Appellate Court
decision in Lama v. Preskill, 818 N.E.2d 443 (Ill. App. Ct. 2004),
a medical malpractice case.  Plaintiff alleged negligent surgery by
the defendant physician.   The suit was not filed until more than
two years after the surgery, so there was a limitations issue.
Plaintiff alleged in her complaint that she did not discover her
injury until a point in time well within the limitations period.
The trial court held that by making this allegation the plaintiff
waived any privilege as to communications with her attorney
concerning when she knew she was injured.  On appeal, the majority
of the Panel agreed.   There was a dissenting opinion by Justice
Bowman, however, which we think is in line with what the Illinois
Supreme Court would hold if it were presented with the question:

> The case at bar is not a situation where the plaintiff
> has taken the affirmative step of placing the advice of
> her former attorney at issue in order to assert a claim
> or defense.   Rather, it is defendant who seeks to
> discover plaintiff's husband's communications with Carden
> [the attorney] in order to disprove plaintiff's claim.
> Because plaintiff, as privilege holder, is not attempting
> to prove her claim (or defense) by relying upon these
> privileged communications in order to prevail, she has
> not waived any attorney-client privilege with Carden.

Id. at 453.

Our conclusion is that Allmerica has not waived the attorney-client privilege in regard to any communications it had with its attorneys concerning the subject of the July Restrictions.

However, this does not dispose of Emerald's motion to compel. Emerald argues that some of the questions Allmerica's witnesses refused to answer were not protected by the privilege in any event, since they merely called for factual information as distinguished from attorney-client communications.  Allmerica's position appears to be that when facts are communicated to the client by the attorney, then the fact of such communication (including the timing of it), and whether the client learned the fact, are protected by the privilege and cannot be inquired into.  The parties have briefed this question to some extent, but we request that they give it additional attention now that we have resolved the basic question of waiver.  The parties are requested to file cross-memoranda on the question of unprotected fact vs. privileged confidential communication by July 29, and cross-responses by August 19, 2005.[1]

_____

[1] One question we have is how to test Allmerica's claim that a fact was disclosed by the attorney.  When the question specifically calls for what the attorney said, the applicability of the privilege is usually fairly clear.  But here, we have only the objection of counsel to support the claim that a particular fact was conveyed to the client by the attorney.  Is there anything analogous to a "privilege log" that could be of use in this kind of situation? How have the cases handled the problem?

When we have read the additional memoranda we will set a date for a status conference and perhaps oral argument on this remaining issue.

DATE:        July 14, 2005

ENTER:       _____
             John F. Grady, United States District Judge