02-5251.061                                                    February 1, 2006

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

AMERICAN NATIONAL BANK AND TRUST    )
COMPANY OF CHICAGO, as Trustee       )
f/b/o Emerald Investments Limited   )
Partnership, and EMERALD             )
INVESTMENTS LIMITED PARTNERSHIP,    )
an Illinois partnership,             )
                                     )
           Plaintiffs,               )
                                     )
      v.                             )    No. 02 C 5251
                                     )
ALLMERICA FINANCIAL LIFE             )
INSURANCE AND ANNUITY COMPANY,      )
                                     )
           Defendant.                )

## MEMORANDUM OPINION

The court has under advisement Emerald's motion to compel responses to deposition questions concerning the decision by Allmerica to impose the "July transfer restrictions." Questions have been put to Allmerica witnesses Michael Reardon and John Danello concerning communications between them prior to the issuance of the restrictions. Emerald's hope is that some of those communications will show that Allmerica's motive was only to reduce its possible damages in this case rather than any concern about Emerald's market timing. The parties briefed the motion to compel, and the court began to examine the deposition transcripts, question by question, to determine the extent to which there was merit to Allmerica's contention that the questions called for privileged

communications. It appeared that at least some of the questions were appropriate and that Allmerica's concept of the privilege was overly broad. It occurred to us, however, that the questions might be immaterial. They are based on Emerald's premise that issuing the restrictions for the purpose of limiting the period for which Emerald could claim damages would constitute bad faith.[1] We asked the parties to brief the question of whether a desire by Allmerica to "limit damages would, in the circumstances of this case viewed most favorably to Emerald, make out a case of bad faith." (Order of September 29, 2005.) If a finding that Allmerica was motivated solely by a desire to limit damages would not, as a matter of law, suffice to establish bad faith, then a decision on the motion to compel responses to the deposition questions would be unnecessary.

Allmerica has attempted to limit its briefing to the specific question we asked the parties to address. Emerald, however, has strayed from that subject and has attempted to reopen our ruling of February 8, 2005 that the July restrictions were authorized by the annuity contract. Most of Emerald's argument concerning the interpretation of the contract is entirely new and is set forth in its surreply brief. The argument should have been raised in February 2005, but we will nonetheless address it now.

---

[1] In our oral ruling of February 8, 2005, we held that Allmerica had the right to impose the July restrictions. We also held that Emerald would have the right to challenge Allmerica's good faith in doing so. (Tr. of February 8, 2005 at 65-66, Ex. A to Allmerica's Reply Memorandum on Whether Limiting Damages Constitutes Bad Faith.)

This will require a review of why we held the July restrictions were valid.

We relied on the following two provisions of the annuity contract:

> <u>The Company reserves the right</u>, subject to compliance with applicable law, <u>to</u> add to, <u>delete from</u>, or substitute for <u>the shares of a Fund that</u> are held by the Sub-Accounts or that <u>the Sub-Accounts may purchase</u>. <u>The Company also reserves the right to eliminate the shares of any Fund no longer available for investment</u> or if the Company believes further investment in the Fund is no longer appropriate for the purposes of the Sub-Accounts.
> . . .
> The Company reserves the right, subject to compliance with applicable laws, to establish additional Guarantee Period Accounts and Sub-Accounts and to make them available to any class or series of contracts as the Company considers appropriate. Each new Sub-Account will invest in a new investment company or in shares of another open-end investment company. <u>The Company also reserves the right to eliminate</u> or combine <u>existing Sub-Accounts</u> and to transfer the assets of any Sub-Accounts to any other Sub-Accounts. In the event of any substitution or change, the Company may, by appropriate notice, make such changes in this and other contracts as may be necessary or appropriate to reflect the substitution or change.

(Ex. D to Allmerica's Reply Memorandum on Whether Limiting Damages Constitutes Bad Faith (emphasis added).) We held that the right to "eliminate" shares contained in the first quoted paragraph, as well as the right to "eliminate" Sub-Accounts contained in the second paragraph, necessarily included the right to restrict new

investment in any Fund.² Emerald argues that these provisions only authorize the elimination of entire Funds and <u>all</u> existing Sub-Accounts, not the restriction of new investment by particular Sub-Accounts in Funds that continue to exist. We see nothing in the contractual language to suport such a limited interpretation.

With respect to the second quoted paragraph, Emerald argues in its surreply that Allmerica had no right simply to "eliminate" Sub-Accounts. It can only "eliminate [a Sub-Account] and transfer" its assets to some other Sub-Account:

> The sentence read in full, does not give Allmerica the unconditional power to "eliminate . . . existing Sub-accounts" as Allmerica claims. Rather, there are *two* components, joined by the conjunctive word "*and*." The Company has reserved the right "to eliminate or combine existing Sub-Accounts *and to transfer*" those assets to *another* Sub-account, presumably, one of the "same asset class." *See* Ex. 3 (Prospectus) at 70. Allmerica can "eliminate...*and transfer*." Or it can "combine . . . *and transfer*." But it may not simply "eliminate." The use of the words "*and transfer*" (rather than "*or*") makes that clear.

(Emerald's Surreply at 4.) We held in our February 8 ruling that the language "The company also reserves the right to eliminate . . . existing Sub-Accounts" gave Allmerica the right to eliminate Sub-Accounts. We did not consider the argument that Allmerica would also be required to transfer the assets of an eliminated Sub-Account to another Sub-Account, because Emerald had not made that

---

²⁄ The right to "delete from" the shares of a Fund that a Sub-Account may purchase, found in the first paragraph, also appears to authorize the July restrictions.

argument at the time we ruled.  Like many afterthoughts, the argument hardly merits serious consideration.  The contractual language is in the disjunctive, and Emerald's conjunctive reading is gratuitous.  Emerald argues that its interpretation is necessary in order to effectuate the intentions of the parties as reflected in parol evidence, which we have held--and Emerald itself has argued in another connection--is superseded by the integrated contract.  We are still of the view that these contractual provisions did give Allmerica the right to issue the July restrictions.

* * * *

We turn now to the issue of whether imposing the July restrictions for the sole purpose of reducing Emerald's damages could be found by a jury to constitute bad faith on the part of Allmerica.  We believe it could not.  The exercise of an express contractual right for one's own benefit, in the circumstances of this case, could not be found by a jury to constitute bad faith. Emerald relies on language in <u>Harbor Insurance Co. v. Continental Bank Corp.</u>, 922 F.2d 357, 363 (7th Cir. 1990) that "[a] party who hokes up a phony defense to the performance of his contractual duties and then when that defense fails (at some expense to the other party) tries on another defense for size can properly be said to be acting in bad faith."  Emerald sees this statement as applying to Allmerica's pretending to be motivated by concern for

other investors when in fact its reason for imposing the July restrictions was only to limit its own exposure to damages. The analogy does not work. <u>Harbor Insurance</u> involved insurance companies that had filed a declaratory judgment action contending that the directors of the insured bank had been guilty of such "egregiously wrongful acts" as to bar the bank from seeking indemnity under the officer and director insurance policies. The insurers later changed their position to claim that "the directors were innocent and therefore [the bank] was not exposed to derivative liability for their wrongdoing," <u>id.</u> at 362. The Court of Appeals held that the trial judge had erred in refusing to allow the bank to place in evidence a copy of the declaratory judgement complaint, because the bank should have been able to rebut the insurance companies' "innocence" defense by introducing their earlier pleading alleging that the directors had been guilty of "egregious" misconduct. <u>See</u> <u>id.</u> at 365. The Court further held that in a new trial the jury should be instructed about the conditions under which a change in the theory of defense could be considered evidence of bad faith. <u>Id.</u>

Nothing like the <u>Harbor Insurance</u> situation is involved in Allmerica's issuance of the July restrictions. Allmerica has filed no pleading in which it denies being motivated by a desire to limit damages, nor is it presently contending that it was so motivated. It has taken no inconsistent positions in this litigation, as the

insurers did in <u>Harbor Insurance</u>. Allmerica's witnesses have asserted that a desire to curtail market timing was the motivation for the July restrictions, and they have denied that a desire to limit Emerald's damages played any role in the decision to impose the restrictions. If Emerald were permitted to continue with its discovery on the subject, conceivably it could turn up evidence that damages did indeed enter into in the decision. But what then? Would that alone permit the jury to find that Allmerica had acted in bad faith when it invoked its contractual right to impose the restrictions? We do not see that it would. At most, a finding that Allmerica did consider the matter of damages would show that Allmerica had acted in its own interest.[3]

If the July restrictions are valid, they will bar most of the damages Emerald seeks to collect. The ultimate question is this: Does the invocation of a express contractual provision for one's benefit, to the detriment of the other contracting party, constitute bad faith? It does not, in the absence of conduct which would of itself constitute bad faith, such as taking unfair advantage of an unsuspecting party. <u>See, e.g.</u>, <u>Market St. Assocs. Ltd. P'ship v. Frey</u>, 941 F.2d 588, 597-98 (7th Cir. 1991).

---

[3] We need hardly say that we express no opinion as to what Allmerica's motive actually was. In this opinion, we are merely <u>assuming</u>, for purposes of argument, that its motive was to limit damages.

The following language from <u>Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting</u>, 908 F.2d 1351 (7th Cir. 1990), is instructive:

> "Inequitable conduct" in commercial life means breach <u>plus</u> some advantage-taking, such as the star who agrees to act in a motion picture and then, after $20 million has been spent, sulks in his dressing room until the contract has been renegotiated. Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of "good faith". Although courts often refer to the obligation of good faith that exists in every contractual relation, <u>e.g.</u>, UCC § 1-201 . . ., this is not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document. "Good faith" is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties. When the contract is silent, principles of good faith—such as the UCC's standard of honesty in fact, UCC § 1-201(19), and the reasonable expectations of the trade, UCC § 2-103(b) (a principle applicable, however, <u>only</u> to "merchants", which Bank is not)—fill the gap. They do not block use of terms that actually appear in the contract.

908 F.2d at 1357 (some citations omitted). We think these observations are applicable to the issue we have framed, and we will be guided by them. See also <u>Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.</u>, 212 F.3d 373, 381-82 (7th Cir. 2000).

## **<u>CONCLUSION</u>**

We hold that even if Emerald could show Allmerica's motive in issuing the July restrictions was solely to limit Emerald's

damages in this case, that would not, as a matter of law, be sufficient to show bad faith in the issuance of the restrictions. Accordingly, Emerald's Motion to Compel Answers to Deposition Questions Regarding the July Restrictions will be denied as moot.

DATE:     February 1, 2006

ENTER:    _____
          John F. Grady, United States District Judge