IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee f/b/o EMERALD INVESTMENTS LIMITED PARTNERSHIP, and EMERALD INVESTMENTS LIMITED PARTNERSHIP, an Illinois Partnership, | ) ) ) ) ) ) | Civil Action No. 02 C 5251 |
| | ) | Judge Grady |
| Plaintiffs, | ) ) | Magistrate Judge Mason |
| v. | ) ) ) | |
| ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY COMPANY, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' RENEWED RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW AND RELATED RULE 59 MOTION FOR A NEW TRIAL

Plaintiffs (collectively, "Emerald") move for judgment as a matter of law under

Federal Rule of Civil Procedure 50(b) and for a new trial on the amount of damages owed to

Emerald as a result of Allmerica's material breaches of its Annuity Contracts under Federal Rule

of Civil Procedure 59 for the reasons set forth in the memorandum attached hereto as Exhibit A,

which is incorporated herein by reference.

1. Emerald moves for judgment as a matter of law on the Scudder issue and on the mitigation issue for the reasons stated in its supporting memorandum.

2. Emerald moves for a new trial on the issue of the amount of damages for the reasons stated in its supporting memorandum.

3. Emerald seeks leave under Local Rule 7.1 to file its supporting memorandum (attached as Exhibit A), which exceeds 15 pages in length.

Emerald's memorandum relates to a request for a new trial and judgment as a matter of law after a seven day jury trial which raised various complex legal and factual issues. Emerald has made a good faith effort to properly address the arguments within fifteen pages, but has determined that it requires more than fifteen pages.

WHEREFORE, Emerald seeks that the Court enter judgment in its favor on the Scudder and mitigation issues and a new trial on the amount of damages.

Dated: January 4, 2007

Respectfully submitted,

AMERICAN NATIONAL BANK, as Trustee f/b/o
EMERALD INVESTMENTS LIMITED
PARTNERSHIP, and EMERALD INVESTMENTS
LIMITED PARTNERSHIP

By: /s/ George R. Dougherty
One of Their Attorneys

Charles S. Bergen (#6186596)
George R. Dougherty (#6196945)
Peter S. Roeser (#6257273)
Claudia M. Laurens (#6270144)
Daniel M. Hinkle (#6283092)
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700
Email: gdougherty@grippoelden.com

109585v1

## CERTIFICATE OF SERVICE

I, George R. Dougherty, an attorney, hereby certify that on **January 4, 2007,**

I caused a true and complete copy of the foregoing **PLAINTIFFS' RENEWED RULE 50**

**MOTION FOR JUDGMENT AS A MATTER OF LAW AND RELATED RULE 59**

**MOTION FOR A NEW TRIAL** to be served by Electronic Mail Transmission via ECF as to

Filing Users upon the following counsel of record. Any counsel not registered with the ECF

System will be served a copy via facsimile transmission.

> Alan S. Gilbert
> Gerald E. Fradin
> Wendy N. Enerson
> Diana M. Lin
> **Sonnenschein Nath & Rosenthal**
> 8000 Sears Tower
> 233 South Wacker Drive
> Chicago, Illinois 60606
> *Facsimile: (312) 876-7934*

> /s/ George R. Dougherty
> George R. Dougherty

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMERICAN NATIONAL BANK AND TRUST )
COMPANY OF CHICAGO, as Trustee f/b/o )
EMERALD INVESTMENTS LIMITED )
PARTNERSHIP, and EMERALD ) Civil Action No. 02 C 5251
INVESTMENTS LIMITED PARTNERSHIP, )
an Illinois Partnership, )
                                       ) Judge Grady
          Plaintiffs, )
                                       ) Magistrate Judge Mason
                                       )
     v. )
                                         )
ALLMERICA FINANCIAL LIFE )
INSURANCE AND ANNUITY COMPANY, )
                                         )
          Defendant. )

## PLAINTIFFS' MEMORANDUM SUPPORTING THEIR
## RENEWED RULE 50 MOTION FOR JUDGMENT
## AS A MATTER OF LAW AND RELATED RULE 59 MOTION FOR A NEW TRIAL

Charles S. Bergen (#6186596)
George R. Dougherty (#6196945)
Peter S. Roeser (#6257273)
Claudia M. Laurens (#6270144)
Daniel M. Hinkle (#6283092)
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700
Email: gdougherty@grippoelden.com

Plaintiffs (collectively, "Emerald") submit the following memorandum in support of their motion for judgment as a matter of law under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 50(b) and for a new trial on the amount of damages owed to Emerald as a result of Allmerica's material breaches of its Annuity Contracts. *See* Fed. R. Civ. P. 59.

## APPLICABLE STANDARDS

Judgment as a matter of law under Fed. R. Civ. P. 50 is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50. A new trial is appropriate under Fed. R. Civ. P. 59 when the "verdict is against the weight of the evidence," or the trial was not "fair to the moving party." *General Foam Fabricators, Inc. v. Tenneco Chems., Inc.*, 695 F.2d 281, 288 (7th Cir. 1988).

## RELEVANT BACKGROUND

Emerald and Allmerica agreed to the integrated Annuity Contracts[1] in March 1999. Under the Annuity Contracts, Emerald was entitled to freely transfer funds among investment "subaccounts." PX 1, 2. Allmerica had separate contracts with subaccount providers, such as Scudder, pursuant to which the providers made investment vehicles available to Allmerica. *Id.*; *see also* DX 414 (Participant Agreement).

Emerald invested $5 million in the Annuity Contracts based on the promises contained therein, including the right to unrestricted transfers. Using its trading strategy from March 1999 until Allmerica's breaches (December 2001), Emerald earned approximately 40% returns (over this 34-month period), turning its initial $5 million investment into over $12 million. In December 2001, Allmerica breached the Annuity Contracts by restricting Emerald's ability to transfer its money among subaccounts. *American Nat'l Bank and Trust Co. v. Allmerica Fin.*

---

[1]     Capitalized terms, unless otherwise defined, have the meaning set forth in Emerald's Memorandum Supporting Its Motion for Summary Judgment, filed May 2, 2003.

*Life Ins. and Annuity Co.*, 304 F. Supp. 2d 1009 (N.D. Ill. 2003) (summary judgment decision), *reaffirmed at* 2004 WL 785049 (N.D. Ill. April 9, 2004) (denial of motion for reconsideration). Allmerica's breaches prevented Emerald from deploying its trading strategy and resulted in a significant loss of profits for Emerald and its investors.

Trial concerning the amount of damages due Emerald from Allmerica's breaches commenced on December 4, 2006. It lasted seven days. Unfortunately, the trial was marred by numerous errors. Despite these errors, the jury returned a verdict in favor of Emerald and against Allmerica in the amount of $1,131,737. Emerald also was awarded by the Court the amount of the surrender fee that Allmerica wrongfully kept when it breached. Judgment was entered against Allmerica and in Emerald's favor on December 19, 2006. This motion is filed within the ten-day period provided for in Fed. R. Civ. P. 50 and 59.

## ARGUMENT

I. **Emerald Is Entitled To Judgment As A Matter Of Law Under Fed. R. Civ. P. 50 And A New Trial Under Fed. R. Civ. P. 59.**

A. **There Was No Requirement that Emerald Prove What Scudder "Might Have" Done Had Allmerica Not Breached to Recover Damages.**

There is no requirement in contract law that Emerald prove what a third party, in this case Scudder, "might have" done had Allmerica not breached the Annuity Contracts. As Allmerica correctly stated in its Motion *in Limine* No. 1, the Seventh Circuit and courts within this district have "repeatedly held that a party's relationship and dealings with a third party are irrelevant to a breach of contract claim." *Id.* at 2 (citing numerous cases). Allmerica's statement of the law was correct, and its attempt to disavow the statement, *see* 11/30/06 Tr. at 32-34, does not alter that fact.

Whether Scudder would have accepted Emerald's submitted trades will never be known with certainty because of Allmerica's decision to breach and not submit Emerald's trades. The

2

Court's insertion of the issue of what Scudder might have done absent Allmerica's breaches

allowed Allmerica, contrary to law, to present "evidence" as to what "might have" happened in

the absence of its breaches. But Allmerica, as the breaching party, bore the risk of this

uncertainty. *Bigelow v. RKA Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946) (stating that the

"most elementary conceptions of justice and public policy require that a wrongdoer shall bear the

risk of the uncertainty which his own wrong has created"); *BE&K Const. Co. v. Will & Grundy*

*Counties Bldg. Trades Council,* 156 F.3d 756, 770 (7th Cir. 1998) ("where, as here, the

uncertainty as to the damages stems from the defendants' ill conduct, the defendants should not

benefit from the uncertainty they created"); *Mid-American Tablewares, Inc. v. Mogi Trading*

*Co.*, 100 F.3d 1353, 1367 (7th Cir. 1996) (it is "particularly in the area of quantifying the amount

of lost profits that courts impose the risk of uncertainty on the breaching party whose breach

gave rise to the uncertainty"); *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*,

770 N.E.2d 177, 199 (Ill. 2002) (defendants "should not be permitted to escape liability because

the amount of the damage they caused is uncertain").[2] Having established the fact of damages,

an issue on which the evidence was overwhelming, Emerald needed to only provide evidence

that tended to show a "basis for the computation of damages with a fair degree of probability."

*Jabat, Inc. v. Smith*, 201 F.3d 852, 857 (7th Cir. 2000). Linking Emerald's damages to "proof"

of the possible actions of a third party was contrary to established law and was error.

---

[2]     Placing the burden of proof on Emerald to demonstrate what Scudder might have done absent
Allmerica's breaches also constituted error. *Compare* 9/11/06 Mem. Op. at 3 *with Munoz v. Expedited*
*Freight Systems, Inc.*, 775 F. Supp. 1181 (N.D. Ill. 1991); *Mueller v. Ameritech Info. Sys., Inc.*,
No. 91 C 3429, 1992 WL 48014 (N.D. Ill. Mar. 3, 1992); *Auburndale State Bank v. Dairy Farm Leasing*
*Corporation*, 890 F.2d 888, 893 (7th Cir. 1989); *Noyes v. Gold*, 34 N.E.2d 1, 3 (Ill. App. Ct. 1941). At
best, what Scudder might have done was a (never pled) affirmative defense for which Allmerica, not
Emerald, bore the burden of proof. *Id.*; *Illinois-American Water Co. v. City of Peoria*, 774 N.E.2d 383,
390-391 (Ill. App. Ct. 2003) (holding that impossibility and frustration are affirmative defenses); *see also*
*Springfield Oil Drilling Corp v. Weiss*, No. 02 C 249, 2003 WL 22025006, at *7 (N.D. Ill. Aug. 28, 2003)
(same).

108776v6

**B.    There Was No Evidence To Support Allmerica's Position That The Board Of Trustees Would Have Determined Not To Accept Allmerica's Trades.**

Allmerica's attempts to prove what Scudder might have done consisted of speculation and inadmissible lay opinion. Contrary to the well-established rule that witnesses typically may only testify as to facts, the Court repeatedly and erroneously allowed witnesses to talk about what they (and worse) others might have done absent Allmerica's breaches. *See, e.g.*, 12/8/06 Tr. at 981-988. For example, Sandow and Becton testified about possible actions of the "Board" in response to trading by Emerald. 12/8/06 Tr. at 981-88; 12/12/06 Tr. at 1417-23. Neither should have been allowed to testify about what the "Board" might have done, an entity consisting of numerous persons whose composition changed over time. 12/12/06 Tr. at 1417-23. Indeed, Becton, the only Board member presented by Allmerica (but over objection, *see* p. 10, below), confirmed that what the Board might have done had Emerald's trades been submitted by Allmerica was pure "speculation." 12/12/06 Tr. at 1419-23. According to Becton, the "Board" never even considered the issue. *Id.* In contrast, there was evidence about what the Board actually did, even in light of "market timing" that was much more significant than that possible in the damages period. The evidence showed Scudder never terminated a relationship with a subaccount provider, never declined a trade, and never went "dark." 12/8/06 Tr. at 1005-07.

In sum, what Scudder "might have" done absent Allmerica's breaches should not have been part of this trial and not an issue for which Emerald bore the burden of proof. *See* p. 3, n.2, above. This trial should not have been about proving that, if certain events occurred, then other events might also have happened, leading to a changing (over time) entity reaching conclusions that it never did. No admissible evidence was adduced to "prove" such speculation. Given the lack of admissible evidence on what the Board might have done other than accept the trades, judgment should have been entered in Emerald's favor on the Scudder issue. Pursuit of the issue

injected material error into the trial such that even if judgment is not appropriate in favor of Emerald, a new trial is warranted.

**C.  Emerald Was Entitled To Present Its Damages Theories To The Jury, Not That Mandated By The Court.**

Instructing the jury that Emerald's lost profits needed to be based solely on particular trades the jury found "Scudder would have permitted" was error. There was no valid economic or legal reason for the Court to mandate that only a particular hypothetical be considered by the jury. Emerald was entitled to present its damages claims to the fact finder, and it was the fact finder's duty to select which damages hypothetical provided the best estimate of Emerald's damages. *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1372 (7th Cir. 1990) (the "essential thing is that the evidence enable the jury to come up with a figure that represents a reasonable estimate of the plaintiff's damages"); *Medcom Holding Co. v. Baxter Travenol Lab., Inc.*, 106 F.3d 1388, 1400 (7th Cir. 1997) ("We emphasize that the calculation and assessment of damages is a question of fact that is reserved for jury").

Specifically, Emerald should have been permitted to present its damage theories through its disclosed expert, Dr. Steven Buser. First, Dr. Buser should have been allowed to testify regarding damages measured as of the time of breach. Dr. Buser used, consistent with Illinois law, a discounted cash flow to create a reasonable estimate of Emerald's damages as of the time of breach. Dr. Buser's methodology was well-recognized in law and his estimate would have been helpful to the jury. *Gross v. Comm'r. of Internal Revenue*, 272 F.3d 333, 340-41 (6th Cir. 2002) (experts employed discounted cash flow method); *Henry v. Champlain Enter., Inc.*, 288 F. Supp. 2d 202, 221 (N.D. N.Y. 2003) (denying *Daubert* motion where expert applied discounted cash flow method); *Koch v. Koch Indus, Inc.*, 2 F.Supp. 2d 1385, 1407 (D. Kan. 1998) (stating that the "discounted cash flow method for valuing income-producing assets is

generally accepted, if not well-established"); *West Haven Sound Dev. Corp. v. West Haven*, 514 A.2d 734, 741 (Conn. 1986) (finding damages estimate based on discounting of future income streams reasonable estimate of damages). Whether damages should have been measured as of the time of breach or at some other time was for the jury to determine. *Belleville Toyota*, 770 N.E.2d at 199-201 (appropriate for jury to decide which of several damages models to select); *American Nat. Bank & Trust Co. of Chicago v. Reg'l. Transp. Auth.*, 125 F.3d 420, 436 (7th Cir. 1997) (jury has wide discretion in determining appropriate calculation of damages); *Arch of Illinois v. S.K. George Painting*, 681 N.E.2d at 1051 (Ill. App. 1997); *Hill of Palos Condo. Ass'n v. I-Del, Inc.,* 626 N.E.2d 1311, 1327 (Ill. App. Ct. 1991). There was no valid basis to strike this testimony.

Second, Dr. Buser should have been allowed to testify regarding the rate of return found in academic studies. *See* Emerald's Resp. to Allmerica's Mot. to Exclude Dr. Buser, filed Nov. 22, 2006; 11/29/06 Hr. Tr. at 4-6. These studies provided benchmarks which the jury could have used to arrive at a damages award. Lost profits can be based on comparable benchmarks, and no expert stated that the strategies used in the studies were not "comparable" to that employed by Emerald. *Target Mkt. Pub. Inc. v. Advo, Inc.*, No. 94 C 2535, 1995 WL 88994, at *3-5 (N.D. Ill. Feb. 24, 1995) (rejecting position that damages had to be calculated based on actual data rather than an expert's projections); *Mid-America*, 100 F.3d at 1367 (relying in part on expert's assertion that profit calculations based on projections by plaintiff were "reasonable" based on his industry experience); *Higgins v. Kinnebrew Motors, Inc.*, 547 F.2d 1223, 1226 (5th Cir. 1977) (expert testimony regarding future damages admissible although relied on figures from bureau of labor statistics rather than using actual expenses in damages calculations). There was no valid basis to exclude Dr. Buser's testimony on these points. 11/29/06 Hr. Tr. at 4-6.

108776v6

Third, Dr. Buser should have been allowed to testify about Emerald's historical rates of return in both the Allmerica account and Emerald's other accounts. Past profits provide an appropriate basis on which the fact finder can base a damages award. *Girsberger v. Kresz*, 63 N.E.2d 781, 791 (Ill. App. Ct. 1993); *Klucznik v. Nikitopaulos*, 503 N.E.2d 1147, 1151 (Ill. App. Ct. 1987). Dr. Buser also intended to refute Allmerica's position that these returns could not have been expected to continue had Emerald been allowed to trade. Emerald's ability to effectively present this evidence was denied by the Court.

Not only did the Court prevent Emerald from presenting its damages positions, it also exacerbated this error by claiming in the presence of the jury that whether Scudder would have accepted trades was the key issue in the case. *See, e.g.,* 12/4/06 Tr. at 28, 119. This issue was reaffirmed as "key" in the Court's verdict forms and instructions, which required the jury to speculate as to what a third party might have done in a hypothetical world where Allmerica had not breached the contracts. Compounding this error was Instruction No. 14, which misstated the circumstances under which an Allmerica trade would be refused, implying that "Scudder" had the right to reject trades without a determination by the Board of Directors of the applicable Fund that rejection was necessary in light of the Board's fiduciary duties. There is no dispute that such an event never occurred, and there was insufficient evidence to determine that the "Board," an ever-changing group of individuals, would have reached such conclusions.

Emerald was also entitled to present other alternative damage claims to the jury. Which hypothetical (benchmarks, past profits, including Lincoln's profits, or Mr. Rubin's analysis) might have more reasonably estimated Emerald's damages was for the jury to decide. *Belleville Toyota.*, 770 N.E.2d at 199-201; *American Nat. Bank*, 125 F.3d at 436; *Arch*, 681 N.E.2d at 1051 ("The determination of which measure of damages to apply is usually a question for the jury");

108776v6

*I-Del*, 626 N.E.2d at 1327 ("only the jury could determine which measure of damages to apply because the alternative measure could only be applied after a factual finding"); *ABC Trans Nat. Transp., Inc. v. Aeronautics Forwarders, Inc.*, 413 N.E.2d 1299, 1314 (Ill. App. 1980) ("Economic data can be interpreted in different ways for different purposes. As useful as a particular accounting technique may be in predicting a company's financial future, it cannot be regarded as conclusive proof of legal damages; the [fact finder] must be free to draw their own inferences from the evidence presented"). There was no proper basis to exclude such evidence, and the Court's decision to do so warrants a new trial.

**D.     Emerald Is Entitled to a New Trial Because the Jury Instructions and Verdict Forms Were Improper.**

**1.     Emerald's proposed Instruction Nos. 26, 30 and 31 should have been given.**

Emerald's Tendered Instruction No. 26 should have been given. Numerous cases hold that reasonable doubts regarding the amount of damages caused by a breach should be resolved against the breaching party, Allmerica. *See* cases cited at pp. 3-4, above. Allmerica's decision to breach the Annuity Contracts by failing to accept and submit Emerald's trades to Scudder resulted in the parties being unable to know what, if any, reaction Scudder would have had to Emerald's trades. Therefore, Allmerica bore the risk of any uncertainty as to what Scudder might have done had Allmerica submitted the trades. *See id.*

Tendered Instruction Nos. 30 and 31 should have also been given. Both stated that the jury could consider, if it chose to do so, Emerald's past profits as benchmarks to estimate damages caused by Allmerica's breaches, a proper statement of the law and especially important in light of the Court's Instruction No. 14. Emerald was entitled to present its damages theories to the jury, not only those dictated by the Court.

**2.    Emerald's proposed Verdict Form properly allowed the jury to consider Emerald's position, not just those identified by the Court.**

Emerald properly objected to the Court's verdict form. Emerald's proposed verdict form should have been used. Emerald's verdict form Alternative No. 1, unlike that submitted to the jury, allowed the jury to award damages based on benchmarks, past profits, academic studies, or Rubin's analysis. Alternative No. 2, offered solely based on the Court's insistence that any proposed form address the Scudder issue, stated the Board of Trustees' options consistent with the Participation Agreement's requirements. Alternative No. 3 should have been used in place of the Court's proposed form, which had the problems identified above, which was eliminated by Emerald's proposed, but rejected, alternative. 12/14/06 Tr. at 1631-33.

A new trial is also warranted because the Court instructions nos. 14 and 9 were incorrect and should not have been given. Court Instruction No. 14 misstated the Participation Agreement's requirements (DX 414) by omitting the requirement that the Board, in light of its fiduciary duties, needed to determine whether it was necessary to terminate Scudder's relationship with Allmerica or refuse to accept Allmerica's omnibus trades. Emerald's proposed instruction corrected this error and should have been given. Court Instruction No. 9 misstated the law regarding the proof Emerald needed to adduce to establish the amount of its damages and the proof Allmerica needed to offer to establish the amount by which Emerald's damages should have been reduced if the jury found that Emerald failed to properly mitigate its damages. To establish the amount of damages, Emerald needed to present only evidence that tended to show a "basis for the computation of damages with a fair degree of probability." *Jabat*, 201 F.3d at 857. For mitigation, Allmerica needed to show that Emerald's damages should have been reduced by a "particular amount." The first is based on clear Seventh Circuit law that was cited to the Court and the second is based on the Illinois Pattern Jury Instructions, which should be given in cases

9

within the Seventh Circuit. 12/12/06 Tr. at 1515-16, 1533-35; Illinois Pattern Jury Instructions § 700.17 (2006 Ed.); *Jabat*, 201 F.3d at 857.

### E.     Numerous Other Errors Marred The Trial.

#### 1.     Becton should not have been allowed to testify.

Becton was known to Allmerica before it submitted its pretrial disclosures under Rule 26. 10/4/06 Hr. Tr. at 5; Allmerica's Resp. to Emerald's Mot. to Quash Deposition and Vacate *Ex Parte* Order at 2; 12/11/06 Tr. at 1155-56. Despite knowledge of Becton, Allmerica failed to list him on its witness list as a potential trial witness and never supplemented its persons with knowledge interrogatory answer to reflect his name or the information he purportedly possessed. Even after Allmerica admittedly made a decision to seek his testimony on November 22, 2006, it waited until the evening of November 30 to disclose this fact to Emerald's counsel, literally one business day before the trial was to begin. 12/11/06 Tr. at 1154-57.

Under Rule 37, Allmerica was not entitled to use Becton's testimony unless its failure to disclose Becton in its interrogatory answer and as a witness in accordance with Rule 26 was "harmless." Disclosure of Becton as a witness on what the Court told the jury was the key issue in the case one business day before the trial was to begin was not "harmless," and the Court's determination to that effect was error.[3] Emerald did not have time to prepare for his deposition or to order its proofs in light of Becton's testimony. Allmerica should not have been permitted to use his testimony, and the Court's decision to allow it to do so was error.

---

[3]     Rule 32 requires that a party be given reasonable notice of a deposition in order for the deposition to be admissible at trial. Emerald was not given reasonable notice. Allmerica has never explained its failure to identify Becton between November 22 and November 30. Its goal in failing to do so is obvious – to have prevented Emerald from adequately preparing for the deposition. Allowing Allmerica to use the deposition awarded this improper gamesmanship.

## 2. Becton's testimony was insufficient to establish what the "Board" might have done.

Becton was the only Board member called by Allmerica. Nevertheless, the jury was allowed to speculate as to what the "Board" thought and might have ultimately done had Allmerica submitted Emerald's trades. There was no admissible evidence that the "Board" thought that, had Emerald's trades been included in those submitted by Allmerica, termination of Scudder's relationship with Allmerica would have been necessary or that the Board would have determined that it was necessary to reject Allmerica's omnibus trades. Indeed, Scudder recognized the importance of Allmerica's contracts with its policyholders and that, based on the promises in those contracts which were "guaranteed," 12/8/06 Tr. at 994 (Sandow), its options regarding frequent trading were limited. Any "determination" on this point by the jury was based on pure speculation. Indeed, the only admissible evidence presented showed that the Board had never considered the issue and had never undertaken such a drastic measure, despite market timing that was literally hundreds of millions of dollars more than that which may have existed during the damage period selected by the Court. 12/12/06 Tr. at 1413-14, 1417-23, 1430-32, 1440.

## 3. Evidence relating to Emerald's dealings with third parties was improperly admitted by the Court.

Evidence of Emerald's relationships with third parties was not relevant. It should have been excluded as irrelevant and confusing to the jury. What Scudder or other parties did in the context of other contracts was not relevant to the issue before the Court. *See* cases cited at pp. 3-4, above.

11

4.      **Emerald was entitled to show that substitutions of Portfolios was an appropriate alternative.**

Emerald was entitled to present testimony on 1) the issue of whether Allmerica could have substituted other portfolios for the international portfolio, and 2) whether Allmerica's decision to close the Scudder portfolios as of July 2004 was a pretext. Emerald should have been allowed to show that if Scudder had not accepted its trades, then Allmerica had the option of selecting another partner. Emerald also was entitled to seek damages for the entire period under the contracts and to show the jury that absent the litigation, Allmerica would not have eliminated subaccounts in July 2004. *See* 2/8/05 Order; 2/1/06 Mem. Op..

5.      **Evidence regarding Scudder's activities concerning retail mutual funds should have been excluded.**

In ruling on Emerald's Motion *in Limine* Relating to Scudder's Efforts to Restrict Frequent Trading in Retail Mutual Funds, the Court stated that evidence concerning retail mutual funds would be admissible only if Allmerica showed that Scudder thought there was "no distinction" between what it did in the retail area as opposed to what it might have done in the variable annuity area. 11/29/06 Tr. at 9-10. In fact, there was no evidence to suggest that any of the entities, Scudder, Allmerica or Emerald, viewed the products as the same. Every witness testified that there were significant differences between retail mutual funds and variable annuities, including that variable annuities were controlled by contract, a competing value that Scudder repeatedly recognized in every document presented by Allmerica addressing this issue. *See, e.g.,* 12/8/06 Tr. at 873-877, 991-996; DX 435. Evidence concerning what Scudder did (and did not do) with respect to retail mutual funds was irrelevant, confusing and unfairly prejudicial under Fed. R. Evid. 402 and 403. It should not have been admitted.[4]

---

[4]      This evidence includes Scudder's activities regarding 401K funds, which were improperly admitted over objection. 12/12/06 Tr. at 1373-74. Again, these situations involved different contracts

6. **Incomplete and unauthenticated documents should not have been admitted into evidence.**

Over objection, the Court allowed Allmerica to place into evidence parts of documents for which proper foundations were not made. For example, the Court allowed "Board minutes" into evidence despite a complete lack of testimony concerning their authenticity and foundation to qualify within a hearsay exception. Such evidence was highly prejudicial, and Allmerica knew months before the trial of its incompleteness. All such evidence should have been excluded, including DX 906, 941, 942, 943, 944. It was also error for the Court to admit DX 728 and 904 for the reasons stated on the record during trial. The documents lacked sufficient foundation, were not properly authenticated by any witness, contain hearsay, and were admitted after the close of both parties' evidence and thus after Emerald's chance to examine the witnesses about them had passed.

7. **Exclusion of the March 11, 1999 draft letter.**

Emerald informed Scudder of its desire to trade frequently pre-contract. Nevertheless, the Court excluded testimony regarding Scudder's pre-contractual agreements to allow Emerald to make as many transfers as it wished, including written admissions reflecting those agreements. *See* PX 4, 5, 192. This evidence would have been relevant to the issue of whether Scudder would have continued to accept Allmerica's omnibus trades, which included Emerald's trades. It also would have supported the testimony adduced on this point from Emerald's witnesses.

8. **Plaintiffs' Exhibit 279.**

PX 279 was relevant to the Scudder issue and should have been submitted into evidence. Evidence that fund managers were willing to accept 5% market timing money refuted

---

and different programs. Admission of such evidence was especially unfair in light of Allmerica's counsel's arguments in closing that Emerald was stealing from "ordinary citizens" and "investors." Many jurors were "ordinary citizens" and investors with 401(k) accounts.

Allmerica's zero tolerance position. PX 279 contained the same elements of trustworthiness identified by the Court in admitting other documents. There was no basis, given the Court's other rulings, for not admitting this document.

**9.     Testimony of Carron.**

It was error to deny Emerald's motions to exclude the testimony of Andrew Carron. Carron's testimony lacked the required reliability under *Daubert*, and was unduly prejudicial and confusing to the jury. *See* Emerald's Mot. to Exclude Portions of Carron's Testimony, filed Nov. 27, 2006, pp. 1-3, 7-9; Emerald's Mot. to Exclude the Remaining Portions of Carron's Testimony, filed Dec. 11, 2006, pp. 1-3; 12/11/06 Tr. at 1099-1111. Although all of Carron's testimony should have been excluded, his testimony regarding what Emerald's profits would have been if Scudder had used a fair value pricing model developed by Carron himself, using a trigger radically different than the trigger actually used by Scudder, was particularly misleading and inappropriate.

**10.     Rubin's testimony.**

It was error for the Court to correct Mr. Rubin's statement that Scudder could not reject the trades of Emerald (as opposed to Allmerica) in front of the jury when Mr. Rubin's statement was correct. 12/8/06 Tr. at 833-34. It was also error for the Court to direct Mr. Rubin to answer questions on direct examination only in "yes or no" format. *Id.*

**11.     DH2's lawsuit filed against the SEC.**

It was error for the Court to instruct the jury that the Seventh Circuit held in *DH2, Inc. v. the SEC,* 422 F.3d 591 (7th Cir. 2004) that "one of the reasons that the Seventh Circuit court of appeals held that Emerald's challenge to fair market pricing failed; that is, mutual funds do have the discretion to impose fair market pricing in appropriate circumstances." 12/12/06 Tr. at 1336-37. First, DH2, Inc. ("DH2"), *not* Emerald, was the plaintiff in the action before the

14

Seventh Circuit. *DH2*, 422 F.3d at 592. Second, the lawsuit was not dismissed because the

Seventh Circuit determined the mutual funds have the discretion to use fair value pricing.

12/12/06 Tr. at 1296-97. Rather, the opinion makes clear that the lawsuit was dismissed because

the Seventh Circuit held that DH2 *lacked standing* to challenge the "notice-and comment

rulemaking requirements." *DH2,* 422 F.3d at 595-97. Any comments by the Seventh Circuit

regarding "fair value pricing" were *dicta* and not relevant to the merits of the lawsuit. The

Court's admission of and instructions related to the *DH2* lawsuit are thus irrelevant, confusing,

misleading and unfairly prejudicial.

### 12. Emerald properly mitigated its damages.

Emerald acted reasonably to mitigate its damages. Any implicit finding by the jury that

Emerald should have invested in treasury notes for some amount of time (the only alternative

investment presented by Allmerica) is without any basis in law or fact.[5] As David Hokin

testified, Emerald has never invested in ten-year treasury notes, 12/12/05 Tr. at 1467-69, the

value of which may substantially increase or decrease in value based on changes in interest rates.

*Id.*, 12/11/06 Tr. at 1209-11 (testimony by Dr. Carron). Emerald would receive a guaranteed

amount on a ten-year treasury note only if it held it for all ten years. This alleged alternative was

much riskier than Emerald's trading strategy. As a matter of law, it was not reasonable for

Emerald to invest in riskier items entirely different from that in which Emerald had expertise.

*See* 11 Samuel Williston, *A Treatise on the Law of Contracts* § 1353 (3d ed. 1968); *RIV VIL, Inc.

v. Tucker*, 979 F. Supp. 645, 660 (N.D. Ill. 1997); *Pioneer Bank and Trust Co. v. Seiko Sporting

Goods, USA,* 540 N.E.2d 808, 812 (Ill. Ct. App. 1989); *R.E.B., Inc. v. Ralston Purina Co.*,

525 F.2d 749, 756 (10th Cir. 1975). Further, Emerald doing so would have resulted in it

---

[5]     There was also no basis in the evidence for the jury's determination of the amount by which
Emerald should have mitigated damages.

108776v6

incurring a $250,000 surrender fee, an unreasonably large amount compared to potential returns

from the note. *See* Tr., 12/12/06 at 20-21 (testimony of Dr. Carron regarding surrender fee);

*Yang Ming Marine Transp. Corp. v. Okamoto Freighters Ltd.*, 259 F.3d 1086, 1095 (9th Cir.

2001) (plaintiff not required to mitigate damages where would require additional $25,000

expenditure). Because Allmerica could have itself mitigated Emerald's damages by waiving the

surrender fee so that Emerald could invest in other alternative investments but failed to do so, it

may not argue that Emerald acted unreasonably.

### 13. Comments made during closing argument warrant a new trial.

A new trial is required because of Allmerica's improper arguments during closing

argument. Claiming that Emerald was taking advantage of "ordinary citizens" was prejudicial,

appealed to the jurors' own self-interest and was done in defiance of the Court's ruling on

Emerald's motion *in limine* regarding evidence of public policy and dilution. Calling Emerald's

trading "theft," and misleadingly arguing that Emerald was not entitled to recover any damages

because Emerald supposedly took steps to hide its activities from other funds, *see, e.g.*, 12/14/06

Tr. at 1700-01, 1744-45, and failed to hire an expert even though it obviously had the "money"

to do so was also improper. *Id.* at 1735-36. Moreover, counsel knew it was fundamentally

untrue since Emerald had hired Dr. Buser to testify. Further, Allmerica wrongfully told the jury

that Emerald was not entitled to damages because they were "greedy," wanted "one more big

score" and wanted to "take money from another set of ordinary investors" (Allmerica's

shareholders), and that the jury should "tell [Emerald] they took the money from the small

investors, they lined their pockets for years, they don't need anymore." *Id.* at 1750-51. In

addition to being contrary to the Court's ruling on Emerald's motion *in limine* to exclude public

policy and dilution evidence, these comments were prejudicial and misleading (Allmerica's

"ordinary shareholder" is in fact Goldman Sachs) and constitute plain error.

16

**14.  Denial of prejudgment interest relating to the surrender fee.**

It was error for the court to deny Emerald prejudgment interest from Allmerica's improper withdrawal of the surrender fee.  Emerald is entitled to prejudgment interest from May 20, 2003, the date Allmerica improperly withheld the surrender fee of $150,000, until December 12, 2003, the date of this Court's ruling that Allmerica breached the Annuity Contracts.  *Residential Mktg. Group, Inc. v. Granite Inv. Group*, 933 F.2d 546 (7th Cir. 1991) ("Prejudgment interest is necessary to compensate the victim of a breach of contract . . . if the amount due under a written contract is determinable, . . ., the plaintiff is entitled to such interest").

## CONCLUSION

For all these reasons, Emerald is entitled to the requested relief.

Dated:  January 4, 2007                 Respectfully submitted,

                                                        AMERICAN NATIONAL BANK, as Trustee f/b/o
                                                        EMERALD INVESTMENTS LIMITED
                                                        PARTNERSHIP, and EMERALD INVESTMENTS
                                                        LIMITED PARTNERSHIP


                                                        By:   /s/   George R. Dougherty
                                                        One of Their Attorneys

17